## No. C-1102

**City of Aurora, Colorado, a municipal corporation v. Jack Zwerdlinger, Morris Dickhart and Jo Coates, individually and as representatives of a class of persons signing that certain referendum petition protesting the going into effect of Ordinance No. 74-146 enacted by the City Council of the City of Aurora, Colorado, and entitled "Utility Rates," and establishing rates for water services in the City of Aurora, Colorado**

(571 P.2d 1074)

Decided October 24, 1977. Rehearing denied November 21, 1977.

Leland M. Coulter, Richard Kaufman, for petitioner.

Bader & Dufty, Robert A. Dufty, for respondents.

Dawson, Nagel, Sherman & Howard, Robert M. Johnson, Michael L. Cheroutes, Jane E. Roberts, for amicus curiae, The Colorado Municipal Bond Dealers Association, Inc.

Susan K. Griffiths, for amicus curiae, The Colorado Municipal League.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

We granted certiorari to review the court of appeals' decision in *City of Aurora v. Zwerdlinger*, 38 Colo. App. 106, 558 P.2d 998 (1976).

On July 22, 1974, the Aurora City Council enacted Ordinance No. 74-146, raising the rates and charges for water supplied by the city. This ordinance was passed to satisfy the requirements of Ordinance No. 73-221..In the earlier ordinance, the city had authorized the issuance of certain bonds and covenanted "that it will establish, maintain, collect and enforce rates and charges for the connection to, use of and services furnished by the municipal water system of the City. . . ." The revenues thus generated, together with other available tax proceeds, were covenanted to be sufficient to pay the costs of operation and maintenance and the principal and interest on the bonds.

A referendum petition demanding the repeal of Ordinance No. 74-146 or its submission to a vote of the qualified electors of Aurora was subsequently filed with the city. The petition was proper in all procedural respects and was timely filed. Aurora refused to repeal the ordinance or to call an election and filed an action seeking declaratory judgment.

The trial court entered a declaratory judgment in behalf of Aurora, holding that the ordinance was not subject to the referendum process. The court of appeals reversed, holding that the Aurora City Charter provided that a referendum could be applied to "all ordinances," unless specifically exempted. Since no exemption existed for utility rate ordinances, the present ordinance was, in the opinion of the court of appeals, subject to the referendum power. We reverse the court of appeals.

Petitioner City of Aurora's primary allegation of error concerns the court of appeals' interpretation of the referendum powers reserved by the Colorado Constitution and the Aurora City Charter. Two questions of first impression are presented: (1) Do the referendum powers in this case apply to administrative, as well as legislative actions?, and (2) Is a municipal ordinance which increases utility rates an administrative or legislative action?

I.

Article V of the Colorado Constitution reserves the initiative and referendum powers to the people:

"Section 1. General assembly — initiative and referendum. The *legislative power* of the state shall be vested in the general assembly consisting of a senate and house of representatives, both to be elected by the people, but the people reserve to themselves the power to propose laws and

amendments to the constitution and to enact or reject the same at the polls. . . .

"The initiative and referendum powers reserved to the people by this section are hereby further reserved to the legal voters of every city, town and municipality as to all local, special and municipal *legislation of every character* in or for their respective municipalities. The manner of exercising said powers shall be prescribed by general laws, except that cities, towns and municipalities may provide for the manner of exercising the initiative and referendum powers as to their *municipal legislation. . . .*" (Emphasis added.)

 We have held that the purpose of these constitutional provisions is to expeditiously permit the free exercise of legislative power by the people. *Brooks v. Zabka*, 168 Colo. 265, 450 P.2d 653 (1969); *Brownlow v. Wunsch*, 103 Colo. 120, 83 P.2d 775 (1938). The terms of the article, being a reservation of powers to the people, are to be liberally construed to effectuate their purpose. *Colorado Project-Common Cause v. Anderson,* 178 Colo. 1, 495 P.2d 220 (1972); *Burks v. City of Lafayette,* 142 Colo. 61, 349 P.2d 692 (1960).

 The intention evidenced by Article V of the Colorado Constitution is to vest only legislative power directly in the people. The language of the article itself refers specifically to the initiative and referendum powers as the means by which the people can exercise the legislative power. It is also not unimportant that these powers are reserved in the article of our Constitution which deals expressly and singularly with the legislative branch of government. We, therefore, construe the constitutional provisions to apply only to acts which are legislative in character, which is consistent with the majority view. *Carson v. Oxenhandler*, 334 S.W.2d 394 (Mo.Ct.App. 1960); *Keigley v. Bench*, 97 Utah 69, 89 P.2d 480 (1939); *see also People v. Graham*, 70 Colo. 509, 203 P. 277 (1921).

The City of Aurora Charter also reserved the referendum power to the people. Article VI, Section 4 of the Charter provides:

"The referendum shall apply to all ordinances passed by the council, except ordinances fixing the rate of taxation on property each year for municipal purposes, making the annual appropriation, calling a special election, or ordering improvements initiated by petition and to be paid for by special assessments. . . ."

 Notwithstanding the limitation of the constitutional referendum power to legislative actions, the terms of the City Charter must be examined because the two reservations are independent of each other. The Charter provisions cannot limit powers reserved by the Constitution. However, if the powers reserved by the Charter exceed the powers reserved by the Constitution, those powers are operative and will be given effect. *Burks v. City of Lafayette, supra; Leach & Arnold Homes, Inc. v. City of Boulder*, 32 Colo. App. 16, 507 P.2d 476 (1973).

▆▆▆ Aurora's Charter provides that the referendum power applies to "all ordinances" except the four listed exemptions. Respondents contend that this language must be read literally to include the ordinance in this case. But references in municipal charters to "all ordinances" have generally been interpreted as meaning only ordinances which are legislative in character. This general rule was reviewed in *Carson v. Oxenhandler, supra*:

"The rule that only acts legislative in their nature are subject to referendum is particularly applicable in the field of municipal corporations. The legislative body of a municipality, whether it be designated a city council, board of aldermen, or otherwise, is frequently called upon to act in an administrative as well as a legislative capacity by the passage of ordinances and resolutions. From an early date in the history of the right of referendum it has been recognized that to subject to referendum any ordinance adopted by a city council, whether administrative or legislative, could result in chaos and the bringing of the machinery of government to a halt. . . .

". . . . The general rule which has developed is stated in *Seaton v. Lackey*, 298 Ky. 188, 182 S.W.2d 336, 338, as follows:

"'Although initiative and referendum provisions widely differ in their terminology, it is the general rule that they are applicable only to acts which are legislative in character, and not to those dealing with administrative or executive matters. . . .'

"In accordance with this rule the words 'any ordinance' in a provision for referendum have frequently, and almost universally, been construed to mean ordinances which are legislative in character. *Keigley v. Bench, 97* Utah 69, 89 P.2d 480, 122 A.L.R. 756; *Tillamook Peoples' Utility District v. Coates,* 174 Or. 476, 149 P.2d 558; *Dooling v. City Council of City of Fitchburg, supra; Hopping v. Council of City of Richmond,* 170 Cal. 605, 150 P. 977. . . ."

We conclude that the Aurora Charter reserved the referendum power only as to all legislative ordinances with the exception of the four exempted matters. Whether the four exempted matters are legislative or administrative so not to have been subject to the referendum in the first instance need not be addressed.

## II.

▆▆▆ Numerous tests have been employed by various courts to determine whether a particular ordinance is legislative or administrative. It has been held that an action that relates to subjects of a permanent or general character are legislative, while those which are temporary in operation and effect are not. Additionally, acts that are necessary to carry out existing legislative policies and purposes or which are properly characterized as executive are deemed to be administrative, while acts constituting a declaration of public policy are deemed to be legislative. *Whitehead v.*

*H and C Development Corp.*, 204 Va. 144, 129 S.E.2d 691 (1963); *Keigley v. Bench, supra*; *Monahan v. Funk*, 137 Or. 580, 3 P.2d 778 (1931).

Substantial disagreement exists in different jurisdictions as to whether certain types of ordinances are administrative or legislative. Such is the case with municipal ordinances which set utility rates. 5 *McQuillin, Municipal Corporations*, 3rd ed. § § 16.55, 16.57.

Nonetheless, we are in agreement with those jurisdictions which hold that utility rate ordinances are administrative in character. The reasons for this conclusion are well expressed in *Whitehead v. H and C Development Corp., supra*:

"The successful operation of a public utility is a business proposition involving the exercise of discretion and good judgment in management. Expenses incident and essential to proper operation are necessarily based on the cost of labor, material and other factors at the time the services are rendered. They are of such a fluctuating nature, due to economic and other temporary conditions, as to make it impractical, if not impossible, for the general public to appraise them in the absence of specific data, facts and information necessary to arrive at a fair and accurate judgment upon the subject. The changing expense factor goes to the very heart of the operation. . . .

"While the establishment of the city-owned water system may have been in pursuance of a broad public policy and, therefore, a legislative matter, the receipts and expenses incidental to its maintenance and management are executive or administrative matters. It is clear that the provisions of the proposed ordinance of the electors are merely temporary in operation and effect. The ordinance does not propose to make a new law, it is one executing a law already in existence, merely changing an expense factor in the maintenance of a public utility. It pursues no new policy. It pursues a plan already adopted by the city council. Judged by these tests, it is administrative rather than legislative."

Such an approach results in the conclusion that the challenged ordinance in this case was administrative in character. Since the ordinance was administrative in character, it was not subject to the referendum powers reserved to the Aurora electors by either the Colorado Constitution or the Aurora Charter.

Accordingly, the judgment is reversed, and the cause is return to the court of appeals for remand, with directions to reinstate the trial court's judgment.

MR. JUSTICE KELLEY, MR. JUSTICE LEE, and MR. JUSTICE CARRIGAN do not participate.