CITY OF IDAHO SPRINGS, a
municipal corporation,
Plaintiff-Appellee,

v.

Ben BLACKWELL, Blaine Thomas, and
Max L. Martin, individually and as
Representatives of a Class of Persons
Signing that Certain Referendum Peti-
tion Protesting Any Ordinance, Resolu-
tion or other Measure of the City Coun-
cil of the City of Idaho Springs Regard-
ing Appropriation or Allocation of Rev-
enues, Funds, or Monies for the Pur-
pose of Moving or Relocating the Train
and Grass Valley Schoolhouse or for
Acquiring Land therefor, and as Repre-
sentatives of a Class of Persons Signing
that Certain Initiative Petition Propos-
ing the Repeal of any Ordinance, Reso-
lution, or Other Measure of the City
Council of the City of Idaho Springs
Regarding the Same Topics as Referred
to Above, Defendants-Appellants.

No. 84SA483.

Supreme Court of Colorado,
En Banc.

Jan. 26, 1987.

David M. Kanigel, Evergreen, for plaintiff-appellee.

Calkins, Kramer, Grimshaw & Harring, Charles E. Norton, Charles B. Hecht, Denver, for defendants-appellants.

ERICKSON, Justice.

This is an appeal from the district court's order declaring that the choice of the site and the structure to be used as the Idaho Springs city hall was an administrative matter that was not subject to the referendum and initiative powers guaranteed by Colo.Const. art. V, § 1. The trial court also enjoined the proposed election on the petitions for initiated ordinances. We affirm.

I.

The facts are not in dispute and are set forth in a stipulation that was filed with the trial court. On November 14, 1977, the City Council (Council) of Idaho Springs (City) enacted an ordinance establishing 3% city sales and use taxes to fund a number of prioritized projects, including a city hall. The ordinance, which was submitted to and approved by the Idaho Springs electorate in a special election, directed that the revenue raised by the new taxes was "to be deposited solely in the capitol [sic] improvement fund to be used in the priority of: sewer plant and/or water transmission lines, followed by City Hall construction...."

On January 23, 1984, the Council unanimously approved a motion authorizing the purchase of real property known as the "Skaff-Sweet property" as the site for a new city hall. The same motion provided that a local historic landmark, the Grass Valley Schoolhouse, would be moved to the Skaff-Sweet property and renovated for use as the city hall. The City entered into a contract to purchase the Skaff-Sweet property on February 22, 1984. The schoolhouse was moved to the property on June 1, 1984.

Appellants Ben Blackwell, Blaine Thomas, and Max L. Martin are representatives of a class of Idaho Springs voters who are opposed to the purchase of the Skaff-Sweet property and the renovation of the Grass Valley Schoolhouse as the city hall. In March 1984, they filed two "petitions for initiated ordinances" opposing the city hall project. The first petition was for an ordinance that would repeal any measure of the Council that authorized moving the schoolhouse or acquiring land on which to

place the schoolhouse.[1] The second initiated ordinance prohibited the use of any funds available to Idaho Springs for the purpose of relocating the schoolhouse or acquiring land on which to relocate the schoolhouse.[2]

On June 19, 1984, the City filed a complaint in the district court for declaratory and injunctive relief, and more particularly: (1) to declare that the petitions, although styled as "petitions for initiated ordinances," were actually petitions for referenda that were untimely under section 1-40-115, 1B C.R.S. (1986 Supp.); (2) to declare that the petitions addressed administrative rather than legislative matters and were therefore improper; and (3) to grant a preliminary or permanent injunction restraining the appellants from interfering with the expenditure of funds associated with the city hall project.

The City requested and was granted an expedited hearing. The trial court held that the "initiative petition" directed to the Council's adoption of the January 1984 motion was in fact a petition for referendum. Section 1-40-115, 1B C.R.S. (1986 Supp.) requires that a referendum petition be filed with the city clerk within thirty days of the date of the action that is to be referred to the electorate. The trial court concluded that the first petition was untimely because it was not filed with city officials until six months after the Council approved the motion directing the purchase of the Skaff-Sweet property and the relocation of the schoolhouse. The trial court held that the second petition addressed administrative rather than legislative matters, and was not subject to the power of initiative, and entered an "injunction against holding the [referendum and initiative] election."

On appeal three grounds are asserted for reversal. Appellants contend that the City did not have standing to contest, and the district court did not have jurisdiction to decide, the validity of the initiated ordinances until an election was held. As a second ground, appellants assert the petitions addressed legislative matters that were within the initiative power granted by the constitution. The third error is alleged to be the ruling of the district court that the first petition was a referendum, and subject to the time limitations of section 1-40-115, 1B C.R.S. (1986 Supp.). Because we decide the first two issues adversely to the appellants, we do not address the third ground for reversal.[3]

1. The first proposed initiated ordinance provided in pertinent part:

Section 1. Any ordinance, resolution, or other measure of the City Council of Idaho Springs, Colorado incurring debt in any form, or appropriating or allocating any revenues, funds, or monies from the City of Idaho Springs Conservation Trust Fund or from any other source for the purpose of moving or re-locating the train and the Grass Valley Schoolhouse currently located at 2325 Miner in the City of Idaho Springs or for acquiring land on which to re-locate this train or schoolhouse is hereby repealed, and declared null, void, and of no further force or effect.

2. The second proposed initiated ordinance provided:

Section 1. No funds from the City of Idaho Springs Conservation Trust Fund, or any other revenues or funds available to the City of Idaho Springs, may be used for the purpose of moving or re-locating the train and the Grass Valley Schoolhouse currently located at 2325 Miner in the City of Idaho Springs, or for acquiring land on which to re-locate this train or schoolhouse.

3. Whether an existing ordinance can be repealed by initiative rather than referendum is a question that has not been squarely addressed by this court. In *McKee v. City of Louisville,* 200 Colo. 525, 616 P.2d 969 (Colo.1980), we upheld a proposed initiated ordinance repealing the city council's annexation ordinance, although the question of the propriety of repealing an ordinance by initiative rather than referendum was not addressed. *See also Cavanaugh v. Department of Social Services,* 644 P.2d 1, 4 n. 6 (Colo.1982); *Van Kleeck v. Ramer,* 62 Colo. 4, 13, 156 P. 1108, 1111 (1916) (dicta in both cases suggest that an existing statute may be repealed by initiative). Other courts are divided on the issue. *Compare, e.g., Morris v. Town of Newington,* 36 Conn.Supp. 74, 411 A.2d 939 (1979) (initiative process may be used to repeal existing ordinance), *aff'd,* 180 Conn. 89, 428 A.2d 342 (1980) *and St. Paul Citizens for Human Rights v. City of Council of St. Paul,* 289 N.W.2d 402 (Minn.1979) (same) *with Batten v. Hambley,* 400 S.W.2d 683 (Ky.1966) (existing ordinance may be repealed only by referendum) *and Landt v. City of Wisconsin Dells,* 30 Wis.2d 470, 141 N.W.2d 245 (1966) (same).

We do not address the question because, whether viewed as a referenda or initiatives,

## II.

■ The trial court had jurisdiction to determine if the petitions addressed legislative or administrative matters before the petitions were submitted to a vote of the Idaho Springs electorate. The Colorado Constitution reserves the right to legislate to the people of Colorado. Colo. Const. art V, § 1; *McKee v. City of Louisville*, 200 Colo. 525, 529, 616 P.2d 969, 972 (1980). The powers of initiative and referendum are liberally construed, and any governmental action that has the effect of curtailing the fundamental right to legislate is "viewed with the closest scrutiny." *McKee*, 200 Colo. at 530, 616 P.2d at 972.

■ The powers of initiative and referendum, although broadly construed, are not unlimited. In *City of Aurora v. Zwerdlinger*, 194 Colo. 192, 195, 571 P.2d 1074, 1076 (1977), we held that the right of referendum applies only to legislative actions of a governing authority. *See also Witcher v. Canon City*, 716 P.2d 445, 449 (Colo.1986). The same limitation is applicable to the power of initiative. *Margolis v. District Court*, 638 P.2d 297, 303 (Colo. 1981). Neither the referendum nor initiative powers guaranteed by the Colorado Constitution grant the people the right to petition for an election on administrative matters. *See generally* 5 E. McQuillin, *Municipal Corporations* § 16.55, at 194 (3d ed. 1981); O. Reynolds, *Handbook of Local Government Law* § 203, at 725, § 204 at 727 (1982) (both authorities declare that the powers of initiative and referendum are generally restricted to legislative matters).

The appellants rely on *McKee v. City of Louisville* where we stated that courts may not "interfere with the exercise of [the right of initiative] by declaring unconstitutional or invalid a proposed measure before the process has run its course and the measure is actually adopted." 200 Colo. at 530, 616 P.2d at 972. Appellants' reliance on *McKee* is misplaced. The trial court in

*McKee* held that the proposed ordinance, if enacted, would be invalid because it would conflict with a state statute prohibiting the de-annexation of land without the consent of affected property owners. We reversed the trial court and held that the validity of the initiated ordinance could "await determination at another time when actual litigants, whose rights are affected, are before the court." 200 Colo. at 533, 616 P.2d at 975. Unlike the present case, we held in *McKee* that the subject matter of the proposed ordinance was of a "clearly legislative character...." *Id.*

■ While we reaffirm our holding in *McKee*, a necessary exception to the rule proscribing premature governmental or judicial interference with initiative and referendum exists where the electorate exceeds the proper sphere of legislation and instead attempts to exercise administrative or executive powers. The people have reserved the right to legislate, not to determine how previously enacted public policies will be administered or executed. A judicial declaration that an initiated or referred ordinance is administrative in character does not infringe the fundamental right of the people to legislate. *See Witcher v. Canon City*, 716 P.2d 445 (Colo.1986) (sustaining summary judgment for municipal authorities because the amendment to a municipal lease was administrative and not subject to referendum); *City of Aurora v. Zwerdlinger*, 194 Colo. 192, 571 P.2d 1074 (1977) (sustaining a pre-election challenge to a proposed referred measure because the referendum did not address legislative matters). The City properly sought a declaratory judgment to determine if the proposed ordinances were in fact proper subjects for legislation. *See Zwerdlinger*, 194 Colo. at 194, 571 P.2d at 1075 (the City of Aurora brought an action for a declaratory judgment after refusing to repeal an ordinance or call an election subsequent to the filing of a petition for referendum).

both of the petitions in this case address administrative matters not within the powers of initiative and referendum.

## III.

We conclude that the petitions for initiated ordinances related to administrative matters and were invalid attempts to exercise the constitutional right of initiative or referendum. A proposed ordinance's classification as legislative or administrative is largely an *ad hoc* determination. *See Witcher v. Canon City*, 716 P.2d 445, 459 (Lohr, J., dissenting). The central inquiry is whether the proposed legislation announces new public policy or is simply the implementation of a previously declared policy. Two "tests" or guidelines are used to resolve the issue in most cases.[4] First, actions that relate to subjects of a permanent or general character are legislative, while those that are temporary in operation and effect are not. *Witcher*, 716 P.2d at 449; *Margolis*, 638 P.2d at 303; *Zwerdlinger*, 194 Colo. at 196, 571 P.2d at 1077. "In this connection an ordinance which shows an intent to form a permanent *rule of government* until replaced is one of permanent operation." 5 E. McQuillin, *Municipal Corporations* § 16.55, at 194 (3d ed. 1981) (emphasis added) (footnote omitted). Second, acts that are necessary to carry out existing legislative policies and purposes or which are properly characterized as executive are deemed to be administrative, while acts constituting a declaration of public policy are deemed to be legislative. *Witcher*, 716 P.2d at 449–50; *Margolis*, 638 P.2d at 303; *Zwerdlinger*, 194 Colo. at 196, 571 P.2d at 1077.

In our view, the selection of the site and structure for the city hall is not a permanent or general act within the meaning of *Witcher* or *Zwerdlinger*. The structure is of course permanent in the sense that it will serve as the city hall for an indefinite period of time. However, the duration of legislation or the anticipated useful life of a municipal improvement does not completely determine the meaning of permanence when determining whether an ordinance is legislative or administrative. *See, e.g., Witcher*, 716 P.2d at 450 (city council's act in amending a lease between the city and the operators of the Royal Gorge bridge was administrative and not subject to referendum, despite the fact that the lease amendment extended the useful life of the bridge until the year 2032). The term "permanent" is used to signify a declaration of public policy of general applicability because a permanent enactment is more likely to involve policy considerations. *See Margolis v. District Court*, 638 P.2d at 304 ("It cannot be disputed that large rezonings ... *are general and permanent in character and involve a general rule or policy.*") (emphasis added).

When viewed under the first guideline, the initiated ordinances prohibiting the purchase of the Skaff-Sweet property and the relocation of the schoolhouse are administrative. The only declared public policy of general applicability, the decision to build the new city hall in the first instance, was made in 1977 when the 3% sales and use taxes were imposed for particular purposes. The ordinances proposed by the appellants only exclude one parcel of real estate (the Skaff-Sweet property) and one type of structure (the Grass Valley Schoolhouse) from the range of choices available to the Council to implement the previously declared policy of securing a city hall. The concerns addressed by the ordinances do not relate to policy declarations of general applicability, and the initiative proposals

---

4. A third test exists in appropriate cases. In *Margolis v. District Court*, 638 P.2d 297, 303–04 (Colo.1981), we held that an original act of zoning is legislative in nature because it is of a general and permanent character. We concluded that an act of rezoning is also legislative and subject to initiative and referendum because "[i]t seems entirely inconsistent to hold that an original act of general zoning is legislative, whereas an amendment to that act is not legislative." *Id.* In *Witcher v. Canon City*, 716 P.2d 445 (Colo.1986), a majority of the court applied the "legislative amendment" test independently to an amendment to a municipal lease. *Id.* at 450. Thus, in appropriate cases, a third "test" exists which provides that an amendment to original legislative acts is likewise legislative.

Appellants do not argue that the Council's 1984 motion amended the 1977 ordinance appropriating funds for city hall construction. We therefore do not consider the applicability of the third "test" to this case.

therefore do not address matters of a permanent or general nature.

The proposed initiated ordinances also must be classified as administrative matters when viewed under the second "test." The choice of location and structure for the new city hall is an act "necessary to carry out" the existing legislative policy to build a new city hall. *See Witcher,* 716 P.2d at 449; *Margolis,* 638 P.2d at 303; *Zwerdlinger,* 194 Colo. at 196, 571 P.2d at 1077. The decision to raise tax revenues to be used in part for city hall construction was made in 1977 and approved by the majority of Idaho Springs voters in a special election. Implementation of the 1977 policy decision in the ordinance is administrative or executive and is not a proper subject for an initiated ordinance.

Judgment affirmed.

QUINN, C.J., dissents and LOHR, J., joins in the dissent.

DUBOFSKY, J., does not participate.

QUINN, Chief Justice, dissenting:

I have no disagreement with the proposition that the central inquiry in determining the legislative or administrative character of an initiated ordinance is whether the ordinance "announces a new public policy or is simply the implementation of a previously declared policy." Maj. op. at 1254. Nor do I quarrel with the two guidelines enunciated by the majority to resolve this issue: first, whether the governmental action at issue relates to subjects of a permanent or general character, in which case it should be considered legislative in nature, or relates to matters that are temporary in operation and effect, in which instance it is to be deemed administrative in nature; and second, whether the governmental action constitutes a declaration of public policy, and is thus legislative in character, or is necessary to carry out an existing legislative policy and purpose, in which case it is properly characterized as executive or administrative. *See Witcher v. Canon City,* 716 P.2d 445, 449–50 (Colo.1986); *Margolis v. District Court,* 638 P.2d 297, 303 (Colo.

1981); *City of Aurora v. Zwerdlinger,* 194 Colo. 192, 196, 571 P.2d 1074, 1077 (1977). My disagreement is with the majority's analysis of the record in light of these guidelines.

## I.

A summary of the pertinent facts is helpful to a proper understanding of this case. In 1977 the City of Idaho Springs enacted a municipal ordinance imposing a three percent sales and use tax on all tangible personal property, commodities, and services for the purpose of funding certain capital improvements, including "City Hall construction." The sole reference in the 1977 ordinance to the city hall is in section IV, which states in pertinent part:

Funds [are] to be deposited solely in the capitol [sic] improvement fund to be used in the priority of: sewer plant and/or water transmission lines, followed by City Hall construction, unless necessity dictates another unknown capitol [sic] improvement use. If this ordinance is approved, for the increase in retail sales and use tax, it shall become effective on the 1st of May, 1978.

It is thus obvious that the "policy decision" articulated in this 1977 ordinance with respect to the city hall is the inclusion of "City Hall construction" as a priority for which the sales and use tax revenues were to be used.

The minutes of the city council meeting on January 23, 1984, more than six years after the enactment of the taxing ordinance, contain the following references to the city hall project:

There was some further discussion regarding moving the Grass Valley School.

Councilman Jones pointed out that it may be possible to cut the cost of the moving and renovation by having the City remove the old building and prepare the area for the foundation. He felt that the rehabilitation costs could also be cut. It would be necessary to meet with Mr. Ryberg to see if he will agree with this proposal.

Tom stated that the property could be paid for by Conservation Trust Funds and we could possibly issue Bond Anticipation notes at a later time.

Jones felt that the cost could be cut to about $135,000 but the Council should discuss this with Mr. Ryberg first.

Ralph Shepherd was present and he was not in favor of the City moving the old building. He pointed out that there is a lot of property now in the City which is used for Governmental purposes and therefore we do not receive any property tax from it. He felt that the Public Service building could be purchased for considerablly [sic] less.

\* \* \* \* \* \*

After further discussion it was moved and seconded by O'Neal and Jones that the City proceed with the purchase of the Skaff-Sweet property at 17th Avenue and Miner Street, and the moving of the Grass Valley School onto this property, provided that moving and renovation of the building can be accomplished for $135,000 or less, and all contracts and documents associated with this project be reviewed and approved by the city Attorney.

The motion carried by roll call vote as follows:

| | |
|---|---|
| Paul Stephenson | Yes |
| Bruce O'Neal | Yes |
| Robert Jones | Yes |
| Michael Miller | Yes |
| Irving Krueger | Yes |
| Mayor Kyler | Yes |

These minutes show that the city council acted on a motion that was based on a multi-faceted discussion concerning the use of Conservation Trust Funds, and possibly bond anticipation notes, in the amount of $135,000 for the purchase of the Skaff-Sweet property as the city hall site, the relocation of Grass Valley Schoolhouse to the new site, and the remodeling of the schoolhouse into the city hall. The ordinances proposed by the appellants would prohibit the city from incurring any debt or using monies "from the City of Idaho Springs Conservation Trust Fund" for the purpose of moving or relocating the Grass Valley schoolhouse or for the purpose of acquiring land on which to relocate the schoolhouse.

## II.

I read the court's opinion to say that the ordinances are beyond the constitutional power of initiative because they do not deal with subjects of a permanent or general character and because they merely carry out the preexisting legislative policy to build a city hall. In contrast to the majority, I am convinced that the proposed ordinances satisfy both of these guidelines.

Implicit in the majority's resolution of this case is the assumption that the actions taken by the city council during the meeting on January 23, 1984, did not announce new policy matters with respect to the city hall project but were merely administrative measures undertaken to implement the preexisting policy enunciated in the 1977 tax ordinance. If this assumption is incorrect, as I believe it is, then clearly the majority's conclusion must also fall, since the proposed ordinances would directly prohibit the execution of the decisions made by the city council at the meeting on January 23, 1984.

The proposed ordinances, in my view, are legislative in nature because they relate to subjects of a permanent or general character and constitute a declaration of a new public policy separate and distinct from the policy enunciated in the 1977 tax ordinance, which established "City Hall construction" as one of the municipal priorities to be funded by sales and use tax revenues generated by the ordinance. The minutes of the council meeting on January 23, 1984, show that the city council did not even consider utilizing sales and use tax revenues for the city hall project. The discussion which preceded the motion, as reported in the minutes, indicates that the only funds under consideration for the initial phase of the project were Conservation Trust Funds. Moreover, during a

hearing on the city's motion for a preliminary injunction, the city treasurer testified that the money for the city hall project would not come from the capital improvement fund, as required by the 1977 tax ordinance, but from a building fund which was derived from the sale of other city property. Although it is unclear whether this building fund referred to by the city treasurer is the Conservation Trust Fund referred to in the minutes of the council meeting of January 23, 1984, there can be no doubt that the fund to which the treasurer referred was a fund separate and distinct from the capital improvement fund created by the 1977 sales and use tax ordinance. A decision establishing the source of public monies to be used for a project of this type has traditionally been viewed as legislative in character. *See, e.g., Hopping v. Council of City of Richmond,* 170 Cal. 605, 150 P. 977 (1915); 5 E. McQuillin, *Municipal Corporations* § 15.04, at 45 (3d ed. 1981).

The city council's action at the January 1984 meeting related to a subject that was no less permanent or general in character and no less declarative of public policy than the subject matter of the 1977 ordinance itself. Furthermore, the council's action went far beyond the mere implementation of the policy enunciated in the 1977 tax ordinance. Simply stated, the city council on January 23, 1984, was not attempting to execute or implement the prior legislative policy enunciated in the 1977 tax ordinance but was making a new policy decision regarding the funding source for the city hall project.

### III.

I would hold that the proposed ordinances, which would prohibit the city from incurring any debt or using any monies from the Conservation Trust Fund for the purpose of acquiring land and relocating the schoolhouse to that land, relate to matters that are fundamentally legislative in nature. As such, the proposed ordinances are within the constitutional power of initiative guaranteed to the people by article V, section 1 of the Colorado Constitution. *See, e.g., Cavanaugh v. State Department of Social Services,* 644 P.2d 1, 6 n. 6 (Colo. 1982); *McKee v. City of Louisville,* 200 Colo. 525, 530, 616 P.2d 969, 972 (1980); *Van Kleeck v. Ramer,* 62 Colo. 4, 13, 156 P. 1108, 1111 (1908). I would therefore reverse the judgment and remand the case to the district court with directions to order the city council, pursuant to section 1–40–116, 1B C.R.S. (1986 Supp.), to submit the ordinances to a vote of the electorate.[1]

I am authorized to say that LOHR, J., joins me in this dissent.

1. A written stipulation of facts, dated August 24, 1984, and filed in the district court, states that the initiative petitions were approved by the city clerk "as to form," that the requisite number of signatures were obtained on the petitions, that the authenticity of the signatures was not disputed, that no protest to the petitions was filed, and that the City of Idaho Springs has indicated that it will not hold an election on the ordinances unless the court finds in favor of the petitioning citizens.