Amy BOURGERON, Plaintiff–Appellant,

v.

CITY AND COUNTY OF DENVER, a municipal corporation; Denver Career Service Board; Kristin F. Rozansky, in her official capacity as Board Member; Michael E. Salazar, in his official capacity as Board Member; Nita Henry, in her official capacity as Board Member; Karen Howard, in her official capacity as Board Member; Ashley R. Kilroy, in her official capacity as Board Member; and Daniel C. Ferguson, in his official capacity as hearing officer for the Career Service Board, Defendants–Appellees.

No. 05CA0780.

Colorado Court of Appeals, Div. II.

Sept. 7, 2006.

Law Office of Hugh S. Pixler, LLC, Marc P. Mishkin, Hugh S. Pixler, Denver, Colorado, for Plaintiff–Appellant.

Cole Finegan, City Attorney, Sybil R. Kisken, Assistant City Attorney, Karla J.

Pierce, Assistant City Attorney, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge ROTHENBERG.

In this action for judicial and administrative review, plaintiff, Amy Bourgeron, appeals the district court's order affirming the decision of a hearing officer upholding a decision by the Career Service Board that revoked her promotion to the position of deputy manager of marketing and governmental affairs. We affirm.

## I. Background

In 1998, Bourgeron was employed by the City and County of Denver as a marketing, public, and employee relations coordinator in the Department of Public Works. That same year, Bruce Baumgartner, the manager of Public Works, was appointed by Mayor Wellington Webb as manager of aviation. At Baumgartner's request, Mayor Webb appointed Bourgeron as deputy manager of marketing and governmental affairs, and she reported directly to Baumgartner. *See* Denver Municipal Code § 9.1.1(E)(iv) (giving the Denver mayor authority to appoint up to fifty persons to positions in any department or agency of the city under the direct control of the mayor).

While she was a mayoral appointee, Bourgeron was considered to be on unpaid leave from her position in the Department of Public Works, and she had the right to return to her former position when the mayoral appointment ended. When her mayoral appointment ended, the deputy manager position was opened to new applicants, but it was to be filled as a career service position.

The majority of city employees falls within the career service personnel system, which is directed by the Board. The day-to-day functions of that system are administered by the Career Service Authority (CSA), which is headed by the personnel director. The CSA is responsible for developing minimum qualifications for each career services position. Applicants for high level management positions are required to have a college degree, but applicants for lower level positions may substitute experience for education.

Bourgeron did not have a college degree. While she was serving her mayoral appointment, she contacted the personnel director, James Yearby, and requested that the CSA modify the minimum qualifications requirements for the deputy manager position to permit experience to substitute for education. Yearby denied her request, explaining that the deputy manager position was a high level executive position and that the rules did not allow experience to be substituted for education.

In 2002, the Board adopted Education and Experience Requirements and Equivalencies Policies and Guidelines (education and experience rule), which permitted experience to substitute for education for many positions within the career service. However, certain enumerated positions, including high level executive positions, were exempt from the education and experience rule and continued to require educational qualifications for which experience could not be substituted.

Baumgartner requested that Yearby make an exception for Bourgeron under the newly adopted education and experience rule and allow her to compete for the deputy manager position, even though she did not have a college degree. Yearby forwarded Baumgartner's request to members of his staff for their recommendations. They concluded that the deputy manager position constituted a high level executive position under the rule and that a college degree was an absolute requirement, and they recommended that Baumgartner's request be denied.

Yearby nevertheless approved Baumgartner's request and wrote a letter explaining his decision. He referred to the deputy manager position as an executive position and clarified that he was "not waiving the educational requirement for this executive position, but [was] waiving the requirement so that [Bourgeron] could compete ... to fill this position." Thereafter, Bourgeron was hired as the deputy manager.

In 2003, the Board gave Yearby an unfavorable performance evaluation and conducted an investigation into allegations that he had failed to comply with personnel rules by waiving education and experience requirements for three employees, including Bour-

geron. After the investigation confirmed that Yearby had granted a waiver to Bourgeron, the Board met in two executive sessions with its attorney to determine whether it had the authority and the duty to rescind the waiver.

After discussing the matter during its two executive sessions, the Board concluded, as pertinent here, that (1) Bourgeron did not meet the educational qualifications for the deputy manager position; (2) Yearby lacked the authority to waive the education requirement of the deputy manager position for Bourgeron; (3) his action was therefore ultra vires and void; and (4) the Board had the authority and obligation to revoke the waiver. Accordingly, the Board revoked the waiver and directed the Department of Aviation to return Bourgeron to her previous position. The Board gave the same treatment to the other high level positions under consideration.

Bourgeron filed two separate grievances with the Department of Aviation objecting to the revocation of the waiver and her demotion, and she later filed appeals of the denials of those grievances. She also filed a direct appeal with the Career Service Board Hearing Office. The three appeals of the Board's decision were treated as consolidated. The Board retained an independent hearing officer to conduct the proceedings, and after a hearing on her grievances and appeals, the independent hearing officer upheld the Board's actions.

Bourgeron then filed this action in the district court seeking judicial review pursuant to C.R.C.P. 106(a)(4) of the decision made by the Board during its executive sessions. She maintained that the hearing officer never had subject matter jurisdiction over her grievances and appeals because the Board's actions were quasi-judicial in nature and subject only to direct judicial review in the district court. But in the event the independent hearing officer had jurisdiction over her, Bourgeron alternatively sought review of his decision, which upheld the Board's actions revoking the waiver and demoting her.

The Board took the position in the district court, as it does here, that the decisions to revoke Yearby's waiver and demote Bourger-

on that the Board made during its executive sessions were administrative and not quasi-judicial decisions, and therefore, were not subject to judicial review under C.R.C.P. 106.

The district court concluded that the Board's actions taken during the executive sessions were administrative and therefore not subject to judicial review under C.R.C.P. 106, and that the hearing officer had jurisdiction to review the Board's actions. The court further concluded Bourgeron was entitled to judicial review, under the Administrative Procedure Act, of the hearing officer's decision upholding the Board's administrative actions. *See* § 24–4–106, C.R.S.2005. After conducting such a review, the district court affirmed the hearing officer's decision.

## II. C.R.C.P. 106(a)(4) Review

■ Bourgeron contends the decisions made by the Board during its executive sessions were quasi-judicial, and therefore, she is entitled to judicial review under C.R.C.P. 106(a)(4). She further contends the Board's decisions were not subject to an appeal to the hearing officer, and the hearing officer lacked jurisdiction over her case. She maintains that both the hearing officer and the district court erred in characterizing the Board's actions as administrative in nature. We disagree.

C.R.C.P. 106(a)(4) provides for judicial review of a decision of any governmental body or officer or any lower judicial body exercising judicial or quasi-judicial functions for the purpose of determining whether the body or officer exceeded its jurisdiction or abused its discretion. *See Widder v. Durango Sch. Dist. No. 9–R*, 85 P.3d 518 (Colo.2004); *Ross v. Fire & Police Pension Ass'n*, 713 P.2d 1304 (Colo.1986).

Judicial review under C.R.C.P. 106(a)(4) is limited to judicial and quasi-judicial agency action. *State Farm Mut. Auto. Ins. Co. v. City of Lakewood*, 788 P.2d 808 (Colo.1990). Administrative actions are not subject to review under C.R.C.P. 106(a)(4). *Sherman v. City of Colorado Springs Planning Comm'n*, 763 P.2d 292 (Colo.1988); *Chellsen v. Pena*, 857 P.2d 472 (Colo.App.1992).

■ Whether an agency action is quasi-judicial or administrative depends on the nature of the governmental decision and the process by which it is reached. *Cherry Hills Resort Dev. Co. v. City of Cherry Hills Village,* 757 P.2d 622 (Colo.1988).

■ When the decision is likely to affect the rights and duties of specific individuals and is reached through the application of preexisting legal standards or policy considerations to present or past facts developed at a hearing, the agency is generally acting in a quasi-judicial capacity. *Cherry Hills Resort Dev. Co. v. City of Cherry Hills Village, supra; Verrier v. Colo. Dep't of Corr.,* 77 P.3d 875 (Colo.App.2003). Quasi-judicial functions ordinarily require the exercise of discretion. *Sherman v. City of Colorado Springs Planning Comm'n, supra.*

■ Acts that are necessary to carry out existing legislative policies and purposes or that are properly characterized as executive are deemed to be administrative. *Bonacci v. City of Aurora,* 642 P.2d 4 (Colo.1982); *City of Aurora v. Zwerdlinger,* 194 Colo. 192, 571 P.2d 1074 (1977).

Here, it is undisputed that the Board's powers and duties include the supervision of Yearby. Further, the record supports the hearing officer's determination that the Board met in executive sessions with its legal counsel to determine whether Yearby exceeded his authority in granting the waiver of the education requirement to Bourgeron, and whether that waiver violated the merit system and the legislative policy behind it. The Board did not consider or address any disciplinary action against Bourgeron or evaluate her job performance, and there is no suggestion that she was other than a highly competent deputy manager.

Although the Board's decision ultimately affected her employment, the focus of the executive sessions was to determine whether the educational requirement could lawfully be waived for the position of deputy manager, whether Yearby's actions in granting the waiver to Bourgeron and others exceeded his authority, and if so, whether the Board had the authority to revoke the waivers.

The hearing officer found, with record support, that the Board's sole purpose in conducting the two executive sessions was to enforce its personnel policies and that it did not need to exercise its discretion, only to follow the plain language of the personnel rules. In furtherance of this purpose, the Board determined that a college degree was an "absolute requirement" for "high level executive classes," which included the deputy manager position; that Bourgeron was not qualified for the position; and that the Board was obligated to revoke the waiver and require her to return to her former position.

As the district court stated in its order, "[T] here is no need for interpretation of an absolute requirement [and][t]he rule clearly states that a college degree is an absolute requirement for high level management positions. The [p]ersonnel [o]fficer reached beyond his authority in granting [Bourgeron] a waiver of this absolute requirement."

We agree with this statement by the district court and similarly conclude the actions taken by the Board following the two executive sessions were administrative in nature. *See Chellsen v. Pena, supra,* 857 P.2d at 475 (concluding "approval or disapproval of dismissals of probationary firefighters by the [Civil Service] Commission is not a quasi-judicial act subject to review under C.R.C.P. 106(a)(4)"). We therefore conclude the hearing officer had jurisdiction to address Bourgeron's challenges to the administrative actions taken by the Board, and contrary to her contention, she was not entitled to judicial review of the Board's action under C.R.C.P. 106(a)(4). *See Bonacci v. City of Aurora, supra; City of Aurora v. Zwerdlinger, supra.*

### III. Administrative Review of Hearing Officer's Decision

■ Although we have concluded Bourgeron was not entitled to judicial review of the Board's decision under C.R.C.P. 106, she was entitled to review by the district court of the hearing officer's decision, and she is also entitled to review by the court of appeals of the district court's order affirming the hearing officer. *See* § 24–4–106(9), C.R.S.2005 (providing that "[t]he decision of the district court shall be subject to appellate review").

We address her arguments on the merits, but conclude they do not warrant reversal of the district court's order.

### A. Standard of Review

■ Administrative proceedings are accorded a presumption of regularity. *Van Sickle v. Boyes,* 797 P.2d 1267 (Colo.1990). A reviewing court may overturn an administrative agency's determination only if the court finds the agency acted in an arbitrary and capricious manner, made a determination that is unsupported by the record, erroneously interpreted the law, or exceeded its constitutional or statutory authority. *See* § 24–4–106(7), C.R.S.2005; *McClellan v. Meyer,* 900 P.2d 24 (Colo.1995).

■ The district court exercises no factfinding authority in its review of an agency decision. Thus, in an appeal from a judgment entered in such a proceeding, this court is in the same position as the district court, and we engage in the same type of record review as did the district court. *Charnes v. Lobato,* 743 P.2d 27 (Colo.1987).

### B. Burden of Proof

■ Bourgeron contends the hearing officer erred as a matter of law in allocating the burden of proof to her. According to her, the burden of proof should have shifted to the Board because its actions were irregular, and the district court erred in ruling otherwise. We disagree.

■ When a party brings an action challenging an administrative decision, the burden of proof is on the party challenging the official action. *McLean v. Farmers' Highline Canal & Reservoir Co.,* 44 Colo. 184, 98 P. 16 (1908); *Atl. & Pac. Ins. Co. v. Barnes,* 666 P.2d 163 (Colo.App.1983); *cf. Garner v. Colo. State Dep't of Pers.,* 835 P.2d 527 (Colo. App.1992).

In this case, the hearing officer concluded the Board's revocation of Yearby's waiver was a nondisciplinary personnel decision and was therefore entitled to a presumption of regularity and validity. *See Chiappe v. State Pers. Bd.,* 622 P.2d 527, 532 (Colo.1981)("A presumption of administrative regularity and constitutionality attaches to the multitude of personnel decisions made daily by public agencies.").

We have upheld the hearing officer's determination that Bourgeron was challenging an administrative, rather than a quasi-judicial, decision by the Board and that the decision was nondisciplinary. Accordingly, we conclude Bourgeron was required to carry the burden of proof at the hearing, and the hearing officer did not err in so ruling.

### C. Ultra Vires Acts

■ Bourgeron next contends that Yearby had the authority to interpret the personnel rules adopted by the Board, that his action granting a waiver to her was not an ultra vires act, and that the hearing officer and district court erred in ruling otherwise. Again, we disagree.

The Career Service rules give the personnel director the power to interpret and enforce the personnel rules adopted by the Board. But the education and experience rule makes it clear that a college degree is an "absolute requirement" for high level executive positions. Because there was no ambiguity in the rule, there was no need for interpretation by Yearby. *Cf. Martinez v. Dep't of Pers. & Admin. Executive Office,* 159 P.3d 631, 633, 2006 WL 1028900 (Colo. App. No. 04CA1174, Apr. 20, 2006)("[A]ny rule or regulation enacted by the [State Personnel] Board that is contrary to or inconsistent with the authorizing statute is void.").

### D. Sufficiency of the Evidence

■ Bourgeron also challenges the hearing officer's finding that the deputy manager position was a "high level executive class," contending this finding was not supported by the evidence. We are not persuaded.

The evidence showed that in her position as deputy manager, Bourgeron supervised approximately 70 employees and 200 volunteers, she was responsible for supervising second and third level supervisors, and she reported directly to the Manager of Aviation. She was responsible for a $6 million budget and also participated in the annual development and approval of the $190 million operating budget and the $400 million capital improvement budget.

Baumgartner admitted the position was a high level executive position, and when he first asked Yearby to make an exception for Bourgeron, Yearby refused, also concluding the deputy manager position constituted a high level executive position under the education and experience rule.

Hence, there is record support for the hearing officer's finding that the deputy manager position was a high level executive position.

### E. Jurisdiction

Finally, Bourgeron contends the Board (1) exceeded its jurisdiction when it revoked Yearby's waiver because its action was tantamount to a demotion, which could only be ordered by an appointing authority; and (2) violated its procedural rules by continuing its personnel investigation after Yearby resigned. However, we have concluded the Board did not exceed its authority to enforce its personnel rules, which is conferred upon it by the Denver City Charter. Thus, we reject Bourgeron's contention that the Board exceeded its jurisdiction or violated its procedural rules.

Order affirmed.

Judge ROY and Judge HAWTHORNE concur.