**Arthur SAPP and Helen Sapp,**
**Plaintiffs–Appellants,**

v.

**EL PASO COUNTY DEPARTMENT OF HUMAN SERVICES and Colorado Department of Human Services, Defendants–Appellees.**

**No. 06CA2291.**

Colorado Court of Appeals,
Div. III.

Feb. 21, 2008.

Beltz, Edwards, Sabo & West, LLP, W. Thomas Beltz, Daniel A. West, Colorado Springs, Colorado, for Plaintiffs–Appellants.

Andrew C. Gorgey, Chief Deputy County Attorney, Colorado Springs, Colorado, for Defendant–Appellee El Paso County Department of Human Services.

John W. Suthers, Attorney General, Laurie Rottersman, Assistant Attorney General, Denver, Colorado, for Defendant–Appellee Colorado Department of Human Services.

Opinion by Judge TAUBMAN.

Plaintiffs, Arthur and Helen Sapp, appeal the district court's judgment affirming the final agency decision of defendant, the Colorado Department of Human Services (DHS), denying the Sapps' request for nonrecurring adoption expenses and adoption assistance payments. The Sapps' request for adoption subsidies was initially denied by defendant, El Paso County Department of Human Services (county department). We affirm.

## I. Background

In late 2001 or early 2002, the Texas Department of Protective and Regulatory Services (Texas Department) removed the subject minor children, G.M. and I.M., from their parents' home and placed them in foster care. The children are half-siblings; they have the same mother but different fathers. Soon thereafter, the Texas Department contacted G.M.'s paternal grandparents, the Sapps, to see if they were willing to be a placement resource for the children. The Sapps agreed, and the children began living with them in March 2002.

In 2003, the Sapps filed adoption petitions in the district court, and the children's parents' rights were either terminated or relinquished. Thereafter, the Sapps adopted the children.

In November 2004, the Sapps applied to the county department to receive adoption subsidies, which are monthly payments to help them care for the children. The county department denied the Sapps' request, con-

cluding that neither child satisfied the statutory requirements necessary for the Sapps, as adoptive parents, to receive adoption subsidies. Specifically, the county department concluded that neither child had been in the custody of "a department" or "licensed nonprofit child placement agency," and they did not have "special needs," which are two of the adoption subsidy prerequisites under section 26–7–103(1), C.R.S.2007.

The Sapps appealed the county department's denial of adoption subsidies to DHS, and an administrative law judge (ALJ) found, as a matter of law, that neither child met the custodial requirement of section 26–7–103(1)(a), C.R.S.2007. The ALJ did not consider the "special needs" issue.

Subsequently, the Sapps appealed the ALJ's decision to the DHS Office of Appeals, which remanded the case to the ALJ to address the "special needs" issue. After an evidentiary hearing, the ALJ concluded that, despite having numerous problems, neither child had "special needs" as defined in section 26–7–101(2), C.R.S.2007, or the corresponding regulatory definition. Moreover, the ALJ concluded that neither child had special needs that acted as a serious barrier to adoption, a prerequisite to receipt of adoption subsidies pursuant to section 26–7–103(1)(c), C.R.S.2007.

The Sapps once again appealed to the Office of Appeals, which affirmed the ALJ's decision. The Sapps then appealed the final agency decision to the district court pursuant to section 24–4–106(4), C.R.S.2007.

In a thorough order, the district court acknowledged that "both children may suffer from one or more of the conditions contained in the regulatory laundry list" defining special needs. However, the court also recognized that "both the statutory and regulatory definitions make it clear that before these conditions rise to the level of 'special needs' they must be so 'special, unusual or significant' as to 'act as serious barriers to the child's adoption.'" Affirming the Office of Appeals decision, the district court concluded that there was substantial evidence in the record to support the ALJ's findings on the "special needs" issue. This appeal followed,

and we have jurisdiction pursuant to section 24–4–106(9), C.R.S.2007.

## II. Standard of Review

A reviewing court may overturn an administrative agency's determination only if the court finds the agency acted in an arbitrary and capricious manner, made a determination that is unsupported by the record, erroneously interpreted the law, or exceeded its constitutional or statutory authority. *See* § 24–4–106(7), C.R.S.2007; *see also Reiff v. Colo. Dep't of Health Care Policy & Fin.*, 148 P.3d 355, 357 (Colo.App.2006).

■ "The district court exercises no factfinding authority in its review of an agency decision." *Bourgeron v. City & County of Denver*, 159 P.3d 701, 706 (Colo.App.2006). "Thus, in an appeal from a judgment entered in such a proceeding, this court is in the same position as the district court, and we engage in the same type of record review as did the district court." *Id.*

■ We examine the record in the light most favorable to the agency decision. *Alliance for Colorado's Families v. Gilbert*, 172 P.3d 964, 968 (Colo.App.2007). Whether the record contains substantial evidence to support the agency decision is a question of law we review de novo. *Id.*

## III. Motion to Reconsider

■ The Sapps contend DHS and the Office of Appeals improperly denied their motion for reconsideration, which requested that DHS consider the transcript from the June 17, 2005 hearing before the ALJ on the "special needs" issue. In its final agency decision, the Office of Appeals determined that the transcript was untimely filed and thus did not consider it.

The Sapps argue that, pursuant to an administrative hearing rule, they established good cause for failing to file the transcript in a timely manner, and, therefore, it should have been considered. Specifically, they assert that the transcriber delivered the transcript to the wrong department, a circumstance beyond their control. On appeal, the county department contends that any error by DHS and the Office of Appeals in not

granting the motion to reconsider was harmless. We agree with the county department's contention.

"A motion for reconsideration of a final agency decision may be granted by the Office of Appeals" upon a showing of "good cause for failure to file exceptions to the initial decision within the 15[-]day period allowed by section 3.850.72, A." DHS Reg. 3.850.73(A), 9 Code Colo. Regs. § 2503–1.

Regardless of whether the Sapps demonstrated good cause to grant the motion to reconsider, they did not argue in their motion to reconsider that they were harmed or prejudiced by the Office of Appeals' failure to consider the transcript. *See Dave Peterson Elec., Inc. v. Beach Mountain Builders, Inc.*, 167 P.3d 175, 176 (Colo.App.2007) (motion for reconsideration properly denied where party did not establish harm or prejudice).

The ALJ's decision included detailed findings of fact and conclusions of law concerning the "special needs" issue. On appeal, the Sapps assert they were prejudiced because they testified at the hearing that the Texas Department did not provide them with sufficient information about the children's special needs and that they delayed finalization of their adoption petition because of their pending request for adoption subsidies. This information, the Sapps assert, was relevant to the determination of whether there were serious barriers to the children's adoption, but it was not relevant to determining whether the children had "special needs." Because the ALJ otherwise concluded the children did not have "special needs," evidence concerning serious barriers to their adoption would not have changed the outcome here. Accordingly, any error by the Office of Appeals in denying the Sapps' motion for reconsideration was harmless.

## IV. Adoption Subsidies

The Sapps contend that DHS erred in concluding that they were not entitled to adoption subsidies for the children, finding that the children did not have "special needs" that acted as a serious barrier to adoption. We are not persuaded.

DHS may provide adoption subsidies to adoptive parents on behalf of a child placed for adoption when certain requirements are satisfied. *See* § 26–7–102, C.R.S.2007; *see also* § 26–7–103, C.R.S.2007. An adoptive parent may only receive adoption subsidies

after it has been determined that all of the following conditions are present at the time the child was placed for adoption:

(a) The child is in the custody of a department or a licensed nonprofit child placement agency and is legally available for adoption;

(b) All reasonable efforts to place the child for adoption have been made without success prior to consideration of a subsidy;

(c) The child is one with special needs as determined by prognosis and diagnosis;

(d) The department or licensed nonprofit child placement agency has determined that the adoptive family has the capability of providing for the nonfinancial needs of the child in all areas;

(e) The department or licensed nonprofit child placement agency is financially responsible for the care of the child;

(f) Children in the custody of a licensed nonprofit child placement agency must meet federal requirements for eligibility under Title IV–E of the federal "Social Security Act," as amended.

§ 26–7–103(1).

Section 26–7–101(2) defines "child with special needs" as "a child with a special, unusual, or significant physical or mental disability, or emotional disturbance, or such other condition which acts as a serious barrier to the child's adoption." DHS regulations define a child with "special needs" as a child with "one or more of the following special, unusual, or significant factors that act as a barrier to the child's adoption": physical disability, mental retardation, developmental disability resulting in educational delays, emotional disturbance, hereditary factors, or "[o]ther conditions that act as a serious barrier to the child's adoption." DHS Reg. 7.203.22(E), 12 Code Colo. Regs. § 2509–3 (2007).

The Sapps contend DHS's final agency decision was contrary to both state and fed-

eral law. Specifically, they maintain that Colorado improperly defines "special needs" on a narrower basis than the federal statute, 42 U.S.C. § 673(c) (2007), and, accordingly, the federal statute controls. For example, the children here are African–American, and the Sapps assert that Colorado's statute does not mention a child's ethnicity or membership in a minority group as a factor in determining "special needs," while the federal statute does. Alternatively, the Sapps argue that even if Colorado law controls, the children fall within DHS's regulatory definition for children with "special needs." We disagree with both arguments.

## A. Preemption

■ The Sapps argue that the federal definition of "special needs" preempts the state's statutory and regulatory definitions because the definitions conflict. The Office of Appeals rejected this contention, and so do we.

■ "The underlying rationale of the preemption doctrine is that the Supremacy Clause invalidates state laws that 'interfere with, or are contrary to, the laws of Congress.'" *Brubaker v. Bd. of County Comm'rs,* 652 P.2d 1050, 1054 (Colo.1982) (quoting *Gibbons v. Ogden,* 22 U.S. 1, 211, 6 L.Ed. 23, 73 (1824)). One of three types of preemption, conflict preemption, voids a state statute that actually conflicts with a valid federal law. *See id.* at 1055; *see also In re Estate of Klarner,* 113 P.3d 150, 156 (Colo. 2005). "A conflict will be found 'where compliance with both federal and state regulations is a physical impossibility ...,' or where the state 'law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Brubaker,* 652 P.2d at 1055 (citation omitted) (quoting in part *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963), and *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)).

In Title IV–E of the Social Security Act, 42 U.S.C. §§ 670–676, Congress provided for adoption subsidies to remove barriers preventing the adoption of children with special needs. These subsidies were intended to allow "each [s]tate to provide, in appropriate cases, ... adoption assistance for children with special needs." 42 U.S.C. § 670.

Colorado's statutory and regulatory provisions defining "special needs" do not "stand[ ] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *See Brubaker,* 652 P.2d at 1055. Rather, the state statute and regulation help effectuate the federal law's purposes and objectives because they enumerate disabilities or conditions that satisfy the "special needs" requirement. Additionally, the statute and regulation include catchall provisions—the "special needs" requirement may be satisfied if a child has "other condition[s] which act[ ] as a serious barrier to the child's adoption." § 26–7–101(2); DHS Reg. 7.203.22(E)(8). Disabilities or conditions enumerated in the federal statute but not explicitly included in the state statute or regulation may be considered under the catchall provisions.

Although the Sapps argue that Colorado's statutory and regulatory definitions of "special needs" do not encompass a child's membership in a minority group, while the federal statute does, a child's membership in a minority group may be considered under Colorado's catchall provisions. Moreover, here, the ALJ did not refuse to consider the children's race as a factor in determining whether they had "special needs." Indeed, the ALJ explicitly found that the children were African–American and concluded that there was insufficient evidence that the children had "other condition[s] which act[ ] as a serious barrier to ... adoption."

■ Federal preemption also applies when congressional legislation explicitly or implicitly reflects a Congressional intent to occupy an entire field. *Brubaker,* 652 P.2d at 1055; *see also English v. Gen. Elec. Co.,* 496 U.S. 72, 79–80, 110 S.Ct. 2270, 2275–76, 110 L.Ed.2d 65 (1990). We agree with the conclusion of the Office of Appeals that the Sapps have failed to demonstrate that federal law alone occupies the field. As the Office of Appeals noted, states are afforded discretion in defining special needs, setting subsidy amounts, and setting attorney fee amounts.

Federal preemption also applies when Congress explicitly preempts state law. *See Pac. Gas & Elec. Co. v. State Energy Conservation & Dev. Comm'n,* 461 U.S. 190, 203, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752 (1983). This type of federal preemption applies only when states are without power to regulate in a particular area. As noted above, that is not the case here.

The Sapps also contend that certain federal policies adopted by the United States Department of Health and Human Services preempt state law, but those policies are not applicable here because they relate to the issue of whether the children were in the custody of a department or a licensed nonprofit child placement agency, which we do not address.

Accordingly, we reject the Sapps' contention that Colorado's statutory and regulatory definitions of "special needs" are narrower than the federal statutory definition and are therefore preempted. Consequently, the final agency decision is not contrary to law.

### B. Special Needs

As noted, the Sapps alternatively argue that the children fall within the regulatory definition of children with "special needs" and cite many factors they believe qualify the children in this category, such as I.M.'s learning disability.

Contrary to the Sapps' argument, the ALJ considered whether the children had "special needs" pursuant to DHS's regulatory definition. After articulating detailed findings concerning the children's difficulties, such as I.M.'s initial obstacles to learning and G.M.'s fear of abandonment, the ALJ found insufficient evidence that the children had a disability or condition satisfying the regulatory definition of "special needs." The ALJ ultimately concluded that there were no serious barriers to the children's adoption. The ALJ's findings are supported by the evidence in the record, and may not be disturbed. Accordingly, we conclude DHS did not err in upholding those findings.

### C. Objective or Subjective Test for Special Needs

Next, the Sapps contend DHS erred in concluding that the children did not have "special needs" that were a serious barrier to adoption, because "the law is unclear whether or not such a barrier must be on an objective basis or on a subjective basis." Specifically, the Sapps assert that an objective standard should apply because a subjective standard unfairly penalizes prospective adoptive parents who agree to adopt regardless of whether they receive an adoption subsidy; under a subjective approach, only those prospective adoptive parents who refuse to adopt unless they receive adoption subsidies could actually receive adoption subsidies. The Sapps alternatively argue that, regardless of the standard applied—subjective or objective, the children qualify for adoption subsidies. We are not persuaded.

"If the language of an administrative rule is ambiguous or unclear, we give great deference to an agency's interpretation of a rule it is charged with enforcing. . . ." *Sierra Club v. Billingsley,* 166 P.3d 309, 312 (Colo.App.2007). "[W]e generally accept that interpretation if it has a reasonable basis in the law and is warranted by the record." *Nededog v. Colo. Dep't of Health Care Policy & Fin.,* 98 P.3d 960, 962 (Colo.App.2004).

DHS is charged with providing adoption subsidies, and, therefore, we defer to its regulatory interpretation of the "special needs" statute.

As a preliminary matter, we agree with DHS's conclusion that barriers to adoption must be serious. Despite the omission of "serious" in one part of the regulation, another part of the regulation and the statute require barriers to adoption to be serious. Based upon this language and case law that a regulation may not modify or contravene an existing statute, *see Ettelman v. Colo. State Bd. of Accountancy,* 849 P.2d 795, 798 (Colo. App.1992), the ALJ interpreted the entire regulation as requiring serious barriers to adoption. DHS approved of the ALJ's interpretation, and we conclude the interpretation has a reasonable basis in law. Accordingly, defer to it.

Neither the statute nor the regulation specifies whether an objective, subjective, or

alternative test applies to the determination of whether serious barriers to adoption exist. However, the ALJ concluded that, applying either a subjective or objective test, there were no serious barriers to the children's adoption here. DHS upheld the ALJ's conclusion, noting that the subsidized adoption program requires individualized consideration.

 Individualized consideration is equivalent to a totality of the circumstances test. Consequently, we conclude that, consistent with DHS's approach, a totality of the circumstances test should be applied to determine whether serious barriers to adoption exist. Under this test, both subjective and objective factors must be considered, including consideration of all attendant circumstances. One factor that may be considered, but is not determinative, is whether prospective adoptive parents agree to adopt regardless of whether they receive an adoption subsidy. .

Here, DHS relied upon an individualized consideration and concluded that the children did not have special needs which acted as a serious barrier to their adoption. We previously concluded that the children did not have "special needs." Therefore, they could not have special needs which acted as a serious barrier to their adoption. Accordingly, DHS's conclusion that there were not serious barriers to the children's adoption is supported by the record. We thus conclude DHS did not err.

Because we have concluded that DHS properly found that the children did not satisfy the "special needs" definition, which was a prerequisite to the Sapps' receiving both types of adoption subsidies, it follows that the ALJ did not err in concluding that the Sapps were not entitled to nonrecurring adoption expenses and adoption assistance payments. Accordingly, we need not consider the remaining issues on appeal.

The district court's judgment is affirmed.

Judge LOEB and Judge HAWTHORNE concur.