2012 COA 100

Robert D. GANDY, Plaintiff–Appellant,

v.

COLORADO DEPARTMENT OF COR-
RECTIONS; and Executive Director of
the Colorado Department of Correc-
tions, Defendants–Appellees.

No. 10CA1238.

Colorado Court of Appeals,
Div. A.

June 21, 2012.

Davis Graham & Stubbs LLP, Kyle W. Brenton, Denver, Colorado, for Plaintiff–Appellant.

John W. Suthers, Attorney General, James X. Quinn, Senior Assistant Attorney General, Kathryn A. Starnella, Assistant Attorney General, Denver, Colorado, for Defendants–Appellees.

1. We reject DOC's argument, raised for the first time in its supplemental answer brief on appeal, that the Council of Europe: Convention on the Transfer of Sentenced Persons, Mar. 21, 1983,

Opinion by Judge CARPARELLI.

¶ 1 Plaintiff, Robert D. Gandy, a Canadian citizen serving a life sentence, applied to the Colorado Department of Corrections (DOC) to be transferred to the Canadian penal system to serve the remainder of his sentence. DOC denied the application and Gandy sued, alleging, among other things, that the basis of DOC's denial was contrary to a federal treaty. The district court ruled that Gandy failed to state a claim for which relief could be granted, and dismissed the suit under C.R.C.P. 12(b)(5). Gandy now appeals the district court's dismissal. We conclude that DOC impermissibly applied its administrative regulation in contravention of the applicable federal treaty.

¶ 2 Accordingly, we vacate the district court's order granting DOC's motion to dismiss and remand the case to the district court. On remand, the court must resolve any pending matters consistent with our ruling that DOC improperly applied the Regulation contrary to the Treaty. Upon reconsideration of Gandy's application, DOC may not deny the application on the erroneous basis that the Regulation precludes Canadian offenders convicted with a life sentence from participating in the Treaty.

I. The Treaty and the Regulation

A. The Treaty

¶ 3 In 1978, the United States and Canada entered into the Transfer of Offenders Treaty Between the United States of America and Canada on the Execution of Penal Sentences, U.S.-Can., Mar. 2, 1977, 30 U.S.T. 6263 (the Treaty).[1] The Treaty authorizes the transfer of offenders between the countries. The preamble of the Treaty states that its purpose is "to enable Offenders, with their consent, to serve sentences of imprisonment or parole or supervision in the country of which they are citizens, thereby facilitating their successful reintegration into society."

¶ 4 Under the Treaty, the offender must request, and receive, a transfer from the

T.I.A.S. No. 10,824 (opened for signature on Mar. 21, 1983), applies to Gandy's transfer request.

country in which he or she is incarcerated. Treaty art. III, § 3. If the offender is a state prisoner, he or she must receive approval from both state and federal authorities. *Id.* art. III, § 5. If the receiving country agrees, the offender is then transferred to the receiving country. *Id.* art. III, §§ 4, 10. After a transfer is complete, the receiving country is responsible for the cost of incarceration and may not challenge, set aside, or otherwise modify the terms of the offender's sentence. *Id.* art. IV, § 4 & art. V.

¶ 5 To be eligible for transfer under the Treaty, the offender must meet certain eligibility requirements. The Treaty provides:

> 7. No Offender shall be transferred unless:
>
> (a) he is under a sentence of imprisonment for life; or
>
> (b) the sentence he is serving states a definite termination date, or the authorities authorized to fix such a date have so acted; or
>
> (c) he is subject to confinement, custody or supervision under the laws of the Sending State respecting juvenile offenders; or
>
> (d) he is subject to indefinite confinement as a dangerous or habitual offender.

*Id.* art. III, § 7.

¶ 6 Colorado implements federal treaties that provide for offender transfers through section 24–60–2301, C.R.S.2011, which provides in relevant part:

> If a treaty in effect between the United States and a foreign country provides for the transfer or exchange of convicted offenders to the country of which they are citizens or nationals, the governor may, on behalf of the state and subject to the terms of the treaty, authorize the executive director of the department of corrections to consent to the transfer or exchange of offenders and take any other action necessary to initiate the participation of this state in the treaty.

¶ 7 The governor delegated to DOC the authority "to approve the transfer of eligible foreign national offenders, pursuant to the conditions of current treaties which provide for such transfer, and the approval of the Department of Justice and the affected foreign country." DOC Admin. Reg. 550–05(IV)(B).

### B. The Regulation

¶ 8 DOC promulgated Administrative Regulation 550–05 (the Regulation) to facilitate international transfers of offenders. The Regulation states that it is the policy of DOC "to return convicted foreign national offenders to their country of origin consistent with the interests of the [S]tate of Colorado, the United States Department of Justice, and the individual offender." Reg. 550–05(I). The Regulation also says that its purpose is to enable "eligible offenders to transfer to their country of citizenship and thereby reduce the custody and maintenance expenses to the [S]tate of Colorado." Reg. 550–05(II)(B).

¶ 9 The Regulation lists several criteria regarding the determination of transfer requests. At issue here is DOC's application of the statement that "[a]n offender may not be eligible if convicted with a life sentence." Reg. 550–05(IV)(C)(7).

### II. Procedural History

¶ 10 When DOC disapproved Gandy's requests to be transferred to the Canadian penal system, he filed suit under C.R.C.P. 106(a)(2), first in 2002 and again in 2007, alleging, in pertinent part, that DOC's rejection of his transfer requests did not comply with the controlling treaties, statute, and regulations.

¶ 11 The 2007 complaint asked the court to require DOC to fairly evaluate requests for transfers under the Treaty, and to stop using unauthorized criteria when considering requests for transfer. The district court dismissed these claims in September 2007.

### A. 2008 Appeal

¶ 12 On appeal in 2008, Gandy asserted that DOC had the authority to consent to transfer requests, but did not have authority to deny them. A division of this court rejected the argument as an implausible reading of the statute, and ruled that DOC had the authority to either grant or deny transfers. *Gandy v. Colo. Dep't of Corr.,* (Colo.App. No.

07CA2381, 2008 WL 5009564, Nov. 26, 2008) (not published pursuant to C.A.R. 35(f)) (*Gandy I* ).

¶ 13 In the alternative, Gandy asserted that, having issued Regulation 550-05, "DOC has an unlawful practice of denying [transfers under the Treaty] without applying any of the criteria of the regulation." *Gandy I.* The division observed that Gandy was seeking mandamus relief and that mandamus cannot issue without proof that the respondent has a clear duty to perform the act. *Id.* (citing *Gramiger v. Crowley,* 660 P.2d 1279, 1281 (Colo.1983)). The division also observed that Gandy's complaint said he was not seeking an order directing DOC to grant his transfer request, but, rather, an order directing DOC to consider his request under the applicable regulations. *Id.*

¶ 14 The division concluded that the record before it did not contain any documents "indicating that DOC considered [Gandy's] transfer application under the governing regulation, or any evidence setting forth why the transfer was denied." It, therefore, remanded the case to the district court with instructions to direct DOC to consider Gandy's transfer application "in light of the factors set forth in Regulation 550-05, or demonstrate to the District Court that it has already done so." *Id.*

¶ 15 The division held that DOC was required to consider Gandy's application under the applicable regulations, and affirmed the district court judgment "insofar as it denied a writ of mandamus directing [Gandy] to be transferred." *Id.*

### B. On Remand

¶ 16 On remand, the district court ordered briefing regarding whether DOC had properly considered Gandy's transfer application. Gandy argued that the Regulation was not a lawful basis to deny his application because the Regulation directly conflicts with the Treaty. DOC did not respond to Gandy's legal argument. Instead, DOC presented evidence that Gandy's transfer request had been evaluated and denied because Gandy was serving a life sentence, which, it asserted, rendered him ineligible for transfer under Regulation 550-05(IV)(C)(7). DOC's

supporting documentation shows that it denied Gandy's transfer request solely because he "is serving a life sentence from Denver County, case # 90CR1491" and Regulation 550-05(IV)(C)(7) "precludes inmates [serving] a life sentence from participating in this program."

¶ 17 In April 2010, the district court again dismissed Gandy's complaint for failure to state a claim under C.R.C.P. 12(b)(5). The court found that DOC proved that it had considered and rejected Gandy's transfer request.

¶ 18 The court concluded that DOC had the authority under Regulation 550-05(IV)(C)(7) to deny Gandy's transfer request because he is serving a life sentence. Reviewing the Treaty, which Gandy submitted, the court held that the Treaty did not "grant [Gandy] a right to transfer as [Gandy] has urged" and that the Treaty "grants Colorado (specifically, the DOC as the delegee of the governor of Colorado) discretion to grant or deny transfer requests." The court held that the Regulation was not unconstitutionally vague and that DOC had the authority to promulgate it. The court did not address the alleged conflict between the Treaty and the Regulation regarding whether offenders serving life sentences are eligible for transfer.

### C. 2010 Appeal

¶ 19 Gandy appealed and submitted a pro se brief in which he argued, among other things, that the Regulation abrogates the Treaty and violates the Supremacy Clause when applied to Canadian nationals. We authorized Gandy to apply for appointment of pro bono counsel through the Colorado Bar Association's Pro Bono Appellate Program. After Gandy applied for and received pro bono counsel, we ordered the parties to file supplemental briefs addressing:

Whether DOC Administrative Regulation 550-05(IV)(C)(7), 1996-2010, unlawfully abrogates a portion of The Transfer of Offenders Treaty Between the United States of America and Canada on the Execution of Penal Sentences, U.S.-Can., Mar. 2, 1977, T.I.A.S. 9552 (entered into force July

19, 1978) (the bilateral treaty) and the United States Constitution? Specifically, does the regulation, which states "[a]n offender may not be eligible if convicted with a life sentence," abrogate Art. III(7)(a) of the bilateral treaty, which states that, as relevant here, "[n]o offender shall be transferred unless ... he is under a sentence of imprisonment for life"?

## III. Standard of Review

### A. Dismissal Under C.R.C.P. 12(b)(5)

■ ¶ 20 We review de novo a C.R.C.P. 12(b)(5) motion to dismiss for failure to state a claim and apply the same standards as the district court. *Denver Post Corp. v. Ritter,* 255 P.3d 1083, 1088 (Colo.2011). Therefore, we accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Id.* However, we are not required to accept as true legal conclusions that are couched as factual allegations. *Id.*

■ ¶ 21 We view with disfavor C.R.C.P. 12(b)(5) motions to dismiss. *Id.* Therefore, we will uphold the grant of a C.R.C.P. 12(b)(5) motion to dismiss only when the plaintiff's factual allegations do not, as a matter of law, support the claim for relief. *Id.*

### B. Supremacy Clause

■ ¶ 22 We review de novo whether the Regulation conflicts with the Treaty and thereby violates the Supremacy Clause of the United States Constitution. *See, e.g., In re Marriage of Anderson,* 252 P.3d 490, 493 (Colo.App.2010) (reviewing whether dissolution decree provision conflicted with the Social Security Act in violation of the Supremacy Clause).

¶ 23 The Supremacy Clause of the United States Constitution provides that all treaties made under the authority of the United States shall be the supreme law of the land:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI, cl. 2.

■ ¶ 24 When a state statute or regulation conflicts with a valid federal law, that statute or regulation is preempted. *Sapp v. El Paso County Dep't of Human Services,* 181 P.3d 1179, 1184 (Colo.App.2008); *see also Sanchez–Llamas v. Oregon,* 548 U.S. 331, 346, 126 S.Ct. 2669, 165 L.Ed.2d 557 (2006) (holding that a treaty binds the states under the Supremacy Clause and that the states must recognize the force of the treaty when adjudicating the rights of litigants).

■ ¶ 25 The underlying rationale of the preemption doctrine is that the Supremacy Clause invalidates state laws that interfere with, or are contrary to, the laws of Congress. *Sapp,* 181 P.3d at 1184. One type of preemption, conflict preemption, voids a state statute or regulation that actually conflicts with a valid federal law. *Id.* A conflict exists when compliance with both federal and state laws is a physical impossibility or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Id.*

## IV. Analysis and Conclusions

■ ¶ 26 It would be impossible for DOC to comply with the Treaty and to apply the Regulation to render an offender ineligible for transfer. Under the Treaty, offenders serving life sentences *are eligible* for transfer. Treaty art. III, § 7(a). Thus, applying Regulation 550–05(IV)(C)(7) to render Canadian offenders serving life sentences *ineligible* for transfer conflicts with the Treaty and is an obstacle to the accomplishment and execution of its full purposes. *See Sapp,* 181 P.3d at 1184.

¶ 27 Accordingly, we conclude that, under the Supremacy Clause, the Treaty preempts DOC from applying the Regulation to render Canadian offenders serving life sentences ineligible for transfer. We also conclude that Gandy stated a claim for which relief can be granted. Accordingly, the district court erred when it ruled otherwise and dismissed Gandy's claim on that basis.

### A. Application of the Regulation Under the Treaty

¶ 28 The Regulation, which is titled "Transfer of Foreign National Offenders to Treaty Nations," was implemented "to return convicted foreign national offenders to their country of origin." Reg. 550–05(I). Regulation 550–05(III)(C) defines "Treaty Nation" as a "country that has entered into a treaty with the United States on the execution of penal sentences." Fifty-nine nations have signed transfer treaties with the United States. *Immigration Law & Crimes* § 8:25 (2011).

¶ 29 DOC has the authority "to approve the transfer of eligible foreign national offenders, *pursuant to the conditions of current treaties which provide for such transfer,* and the approval of the Department of Justice and the affected foreign country." Reg. 550–05(IV)(B) (emphasis added); *see also* § 24–60–2301 ("the governor may, on behalf of the state and subject to the terms of the treaty, authorize" DOC to consent to the transfer of offenders). Thus, DOC must exercise its authority to approve or deny the transfer of eligible foreign national offenders in conformity with the conditions of applicable treaties.

¶ 30 The issue here is whether DOC can apply the Regulation to conclude that a Canadian offender is *ineligible* for transfer under the Treaty "if convicted with a life sentence."

¶ 31 Regulation 550–05(IV)(C) establishes nine "Eligibility Criteria for Transfer Consideration." Under Regulation 550–05(IV)(C)(1), the offender "*must be* a citizen of the treaty nation" to which he or she seeks to transfer, and "*must meet* any additional qualification criteria which treaty nations *may* require." (Emphasis added.) The Regulation also provides that "[a]n offender *may* not be eligible if convicted with a life sentence." Reg. 550–05(IV)(C)(7) (emphasis added).

¶ 32 According to *Webster's Third New International Dictionary* 1396 (3d ed. 1986), the word "may" sometimes expresses permission or lack of permission, and sometimes indicates possibility or probability. When indicating possibility, it is sometimes used where "might" could also be used. *Id.*

¶ 33 Giving the phrase "may not be eligible for transfer" its plain meaning and construing the rule as a whole to give harmonious effect to all provisions, we conclude that Regulation 550–05(IV)(C)(7) advises DOC officials that an offender might not be eligible for transfer under the applicable treaty if convicted with a life sentence. *See Int'l Paper Co.,* 126 P.3d at 226. Applied in that manner, the Regulation recognizes and alerts decision-makers to the possibility that the applicable treaty may render an offender ineligible for transfer if he or she is serving a life sentence. When the applicable treaty makes offenders serving life sentences ineligible, DOC decision-makers may not transfer such an offender. However, when, as here, a treaty make offenders serving life sentences eligible, DOC decision-makers may transfer the offender.

¶ 34 We next turn to Gandy's contention that, under the Supremacy Clause, DOC's application of the Regulation to him is unlawful.

### B. DOC's Application of the Regulation Violated the Treaty

¶ 35 We asked both parties to address whether the Regulation, which provides an offender may not be eligible if convicted with a life sentence, abrogates Art. III(7)(a) of the Treaty, which states that no offender shall be transferred unless he or she is serving a life sentence.

¶ 36 Under the Treaty, a life sentence explicitly renders a Canadian offender eligible to participate in the Treaty. Treaty art. III, § 7. However, in response to inquiries from federal and Canadian authorities, DOC's only stated reason for denying Gandy's transfer application was that Regulation 550–05 "precludes inmates convicted of a life sentence from participating in [the Treaty]."

¶ 37 Thus, although the Treaty explicitly renders Gandy eligible to participate in the Treaty because he is serving a life sentence, DOC applied its Regulation to render Gandy ineligible based on that very criterion. These two eligibility criteria are antithetical.

¶ 38 Under the Supremacy Clause, DOC may not apply Regulation 550–05(IV)(C)(7) in a manner that abrogates the agreement of the United States and Canada that offenders serving life sentences are eligible for transfer under the Treaty. *See Sanchez–Llamas,* 548 U.S. at 346, 126 S.Ct. 2669; *Sapp,* 181 P.3d at 1184.

¶ 39 Accordingly, we conclude DOC's application of the Regulation violates the Supremacy Clause.

### C.   April 2010 Order

¶ 40 The district court granted DOC's motion to dismiss based solely on DOC's evidence that it had considered and rejected Gandy's transfer requests under Regulation 550–05 because he is serving a life sentence. The dismissal on this basis cannot stand.

¶ 41 Accordingly, we vacate the district court's order granting DOC's motion to dismiss and remand the case to the district court. On remand, the court must resolve any pending matters consistent with our ruling that DOC improperly applied the Regulation contrary to the Treaty. Upon reconsideration of Gandy's application, DOC may not deny the application on the erroneous basis that the Regulation precludes Canadian offenders convicted with a life sentence from participating in the Treaty.

¶ 42 The order is vacated, and the case is remanded for further proceedings as directed by this opinion.

ROMÁN and PLANK *, JJ., concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2011.