2017 COA 110

**Robert D. GANDY, Plaintiff-Appellant,**

v.

**Rick RAEMISCH, Executive Director, Colorado Department of Corrections; and Steve Hager, Director of Prisons, Colorado Department of Corrections, Defendants-Appellees.**

**Court of Appeals No. 16CA1267**

Colorado Court of Appeals, Div. III.

Announced August 10, 2017

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24-51-1105, C.R.S. 2016.

Gibson, Dunn & Crutcher LLP, Timothy M. Zimmerman, Reid F. Rector, John D.W. Partridge, Denver, Colorado, for Plaintiff-Appellant

Cynthia H. Coffman, Attorney General, Kathryn A. Starnella, Assistant Attorney General, Denver, Colorado, for Defendants-Appellees

Opinion by JUDGE BOORAS

¶ 1 Plaintiff, Robert D. Gandy, appeals the district court's judgment dismissing his complaint under C.R.C.P. 106 against defendants, Rick Raemisch, Executive Director of the Colorado Department of Corrections (Executive Director), and Steve Hager, Director of Prisons of the Colorado Department of Corrections (Director). We affirm in part, reverse in part, and remand with directions for further proceedings.

### I. Facts and Procedural Background

¶ 2 Gandy is a Canadian citizen serving a habitual criminal life sentence [1] in the custody of the Colorado Department of Corrections (DOC). Gandy has applied numerous times to the DOC to be transferred to serve the remainder of his sentence in the Canadian penal system. *See Gandy v. Colo. Dep't of Corr.*, 2012 COA 100, 284 P.3d 898 (*Gandy III*); *Gandy v. Colo. Dep't of Corr.*, (Colo. App. No. 07CA2381, Nov. 26, 2008) (not published pursuant to C.A.R. 35(f)) (*Gandy II*); *Gandy v. Colo. Dep't of Corr.*, (Colo. App. No. 03CA1056, June 24, 2004) (not published pursuant to C.A.R. 35(f)) (*Gandy I*). His applications have been denied.

¶ 3 At issue is Gandy's September 3, 2015, application for transfer. On February 8, 2016, the Director denied Gandy's application in writing, referencing the Canadian Minister of Public Safety's 2012 denial of Gandy's most recent application. The Canadian application was denied based on Gandy's length of time abroad; the infrequency of his visits; his insufficient personal support or ties to Canada; the lack of evidence the transfer would promote public safety in Canada; and lack of evidence that any of these factors had changed since Gandy's previous applications for transfer. The Director said that, under DOC Administrative Regulation 550-05, Gandy would be eligible to reapply in two years. He suggested that Gandy use the interim period to "provide documentation that would support those reasons for denial having changed." But the Director did not forward Gandy's application to the Executive Director.

¶ 4 Gandy filed a complaint in the district court seeking mandamus relief. He asked the court to direct the DOC to "process and submit" his application for transfer to the United States Department of Justice. He also asked for "a nominal amount for punitive damages" for alleged violations of his constitutional rights. The court granted defendants' motion to dismiss Gandy's complaint pursuant to C.R.C.P. 12(b)(5) for failure to state a claim on which relief can be granted.

¶ 5 Gandy appeals the district court's dismissal of his complaint, contending that he stated a claim for mandamus relief under C.R.C.P. 106. He argues that, under the applicable state statute and DOC administrative regulation, he was entitled to final review of and decision on his transfer application by the Executive Director rather than the Director. He also asserts that the Director improperly imposed a two-year waiting period and "change of circumstances" requirements for any future transfer applications. Finally, Gandy alleges several constitutional violations.

¶ 6 Before we address Gandy's arguments, we first describe the framework of international treaty, state statute, and DOC administrative regulation that governs the transfer of a Canadian offender to serve his remaining sentence in Canada.

---

1. Gandy was sentenced under a previous version of the habitual offender statute, section 16-13-101(2), C.R.S. 1986, which provided that an offender who had been three times previously convicted of a felony must be imprisoned for life.

## II. Laws Governing Transfer of Offenders to Canada

### A. The Treaty

¶ 7 In 1978, the United States and Canada entered into a treaty "to enable [o]ffenders, with their consent, to serve sentences of imprisonment or parole or supervision in the country of which they are citizens, thereby facilitating their successful reintegration into society." Treaty on the Execution of Penal Sentences, Can.-U.S., Mar. 2, 1977, 30 U.S.T. 6263 (the Treaty).

¶ 8 Under certain conditions, an offender may apply for a transfer from the country in which he or she is incarcerated, known as the "Sending State." *Id.* at art. I(a); art. III, ¶ 3. Upon approval of the federal authorities, and, if the offender is a state prisoner, the state authorities, the offender's country of citizenship, known as the "Receiving State," must also approve the transfer. *Id.* at art. I(b); art. III, ¶ 3.

¶ 9 The Treaty provides that

No Offender shall be transferred unless:

    (a) he is under a sentence of imprisonment for life; or

    (b) the sentence which he is serving states a definite termination date, or the authorities authorized to fix such a date have so acted; or

    (c) he is subject to confinement, custody or supervision under the laws of the Sending State respecting juvenile offenders; or

    (d) he is subject to indefinite confinement as a dangerous or habitual offender.

*Id.* at art. III, ¶ 7.

¶ 10 "After a transfer is complete, the receiving country is responsible for the cost of incarceration and may not challenge, set aside, or otherwise modify the terms of the offender's sentence." *Gandy III*, ¶ 4.

### B. The Colorado Statute

¶ 11 Colorado's legislature implements federal treaties allowing offender transfers through section 24-60-2301, C.R.S. 2016, which provides as follows:

If a treaty ... provides for the transfer or exchange of convicted offenders to the country of which they are citizens or nationals, the governor may, on behalf of the state and subject to the terms of the treaty, authorize the executive director of the [DOC] to consent to the transfer or exchange of offenders and take any other action necessary to initiate the participation of this state in the treaty.

### C. The Regulation

¶ 12 The governor delegated authority to the DOC to "approve the transfer of eligible foreign national offenders, pursuant to the conditions of current treaties which provide for such transfer, and the approval of the Department of Justice and the affected foreign country." DOC Admin. Reg. 550-05(IV)(B) (the Regulation). The DOC promulgated the Regulation to promote its policy of "return[ing] convicted foreign national offenders to their country of origin consistent with the interests of the state of Colorado, the United States Department of Justice, and the individual offender." DOC Admin. Reg. 550-05(I).

¶ 13 The Regulation lists eight criteria for determining an offender's eligibility for transfer. DOC Admin. Reg. 550-05(IV)(C). It also describes a "Transfer Application Process," listing steps for the processing of an offender's request for transfer, and, if it is approved, describing the procedures for seeking federal approval from the Department of Justice. DOC Admin. Reg. 550-05(IV)(D).

### III. Standard of Review

■ ¶ 14 We review de novo a dismissal pursuant to C.R.C.P. 12(b)(5) for failure to state a claim and apply the same standards as the district court. *Van Rees v. Unleaded Software, Inc.*, 2016 CO 51, ¶ 9, 373 P.3d 603; *Bly v. Story*, 241 P.3d 529, 532 (Colo. 2010). We accept the factual allegations contained in the complaint as true and view them in the light most favorable to the plaintiff. *Van Rees*, ¶ 9.

## IV. Mandamus Relief

¶ 15 Gandy contends that the district court erred when it dismissed his claim for mandamus relief. Gandy argues that the Regulation's "Transfer Application Process" imposed a duty on the Director to process his application for transfer and send it to the Executive Director for his final review and decision. We agree with Gandy.

### A. Law of Mandamus

■ ¶ 16 "Mandamus is an extraordinary remedy that a court may use to compel performance of a duty that the law requires." *Jefferson Cty. Educ. Ass'n v. Jefferson Cty. Sch. Dist. R-1*, 2016 COA 10, ¶ 10, 378 P.3d 835.

■ ¶ 17 A plaintiff must satisfy a three-part test before a court will grant a request for mandamus relief:

1. the plaintiff must have a clear right to the relief sought;

2. the defendant must have a clear duty to perform the act requested; and

3. there must be no other available remedy.

*Gramiger v. Crowley*, 660 P.2d 1279, 1281 (Colo. 1983).

¶ 18 The dispute in this case focuses on the first two factors: Does the Regulation confer upon Gandy a clear right to have his application for transfer sent to the Executive Director for final review and consideration? Does the Executive Director have a clear duty to perform the final review and determination? We conclude that Gandy has such a right, and that the Executive Director or his designee has such a duty.

### B. Interpreting a Regulation

■ ¶ 19 "In construing an administrative regulation, we apply the same rules of construction that we would in interpreting a statute." *Phillips v. Exec. Dir., Colo. Dep't of Corr.*, 251 P.3d 1176, 1178 (Colo. App. 2010). "We first look to the language of the regulation and analyze the words and phrases according to their plain and ordinary meaning"; "if the language of a regulation is clear and unambiguous, we do not resort to other rules of construction." *Id.* "We may consider and defer to an agency's interpretation of its own enabling statute and regulations the agency has promulgated, but we are not bound by the agency's interpretation." *Bd. of Cty. Comm'rs v. Colo. Pub. Utils. Comm'n*, 157 P.3d 1083, 1088 (Colo. 2007). In construing regulations, we must avoid interpretations that lead to absurd results. *Phillips*, 251 P.3d at 1178.

### C. Transfer Procedures Under the Regulation

¶ 20 Under the Regulation, a chain of individuals and offices reviews an offender's request for transfer and supplies a recommendation regarding the transfer. First, an offender must request transfer through his or her assigned case manager. DOC Admin. Reg. 550-05(IV)(D)(1). The case manager provides the offender with the applicable paperwork for completion. DOC Admin. Reg. 550-05(IV)(D)(2). Then the case manager reviews the application for eligibility and forwards the completed paperwork and a recommendation to the administrative head. DOC Admin. Reg. 550-05(IV)(D)(3). The administrative head also reviews the application and forwards it with a recommendation to the Office of Offender Services. DOC Admin. Reg. 550-05(IV)(D)(4). The Office of Offender Services reviews the application, requests permission for transfer from the sentencing court (or detaining agency, if appropriate), and forwards a recommendation to the Director. DOC Admin. Reg. 550-05(IV)(D)(5). "The [D]irector ... will review the transfer application and accompanying recommendations and forward [them] to the [E]xecutive [D]irector or designee for final review and decision." DOC Admin. Reg. 550-05(IV)(D)(6).

¶ 21 Review by the Executive Director or his designee is the final step in determining the state's consent to transfer an offender. If the state agrees and recommends the offender's transfer, the application will move forward to be processed by the Department of Justice and the Receiving State. DOC Admin. Reg. 550-05(IV)(D)(7)-(16).

## D. Right of Review

¶ 22 Gandy argues that he had a clear right to final review and decision on his transfer application by the Executive Director under the Regulation, but the DOC failed to comply with this final step in the procedures. We agree.

¶ 23 "[P]rovisions that an entity 'will' do something typically are construed, like those using the term 'shall,' as mandatory." *Plains Metro. Dist. v. Ken-Caryl Ranch Metro. Dist.*, 250 P.3d 697, 699 (Colo. App. 2010). Here, the Regulation provides that the Director *"will review* the transfer application and accompanying recommendations *and forward [them] to the [E]xecutive [D]irector or designee* for final review and decision." DOC Admin. Reg. 550-05(IV)(D)(6) (emphasis added). The plain language of the Regulation requires the Director to forward an offender's transfer application with the recommendations described in the transfer application procedures to the Executive Director or his designee for final review and determination. There is nothing in the record to indicate that the Director forwarded Gandy's application to the Executive Director or anyone else following his own review. Our inquiry does not end here, however.

## E. Duty

¶ 24 To obtain mandamus relief, Gandy must also show that defendants have a clear duty to forward his transfer application and perform a final review and determination. The parties dispute who is required to perform the final review and determination of a transfer application under the Regulation: Must the Executive Director perform that duty, or may the Executive Director delegate that duty to another, and, if so, to whom?

¶ 25 Gandy argues that only the Executive Director may perform the final review and make a final decision on a transfer application, because state statutes do not provide for delegation of his authority to make final decisions, and doing so would remove the function from the Executive Director's jurisdiction under section 24-1-107, C.R.S. 2016. Section 24-1-107 allows heads of principal departments, with the approval of the gover-

nor, to allocate and reallocate powers, duties, and functions to divisions, sections, and units under the principal department, "but no substantive function vested by law in any officer, department, institution or other agency ... shall be removed from the jurisdiction of such officer, department, institution, or other agency." A delegation of authority by the Executive Director that retains the final review and determination of transfer applications within the DOC does not remove that substantive function from the Executive Director's jurisdiction or oversight as the head of the DOC.

¶ 26 Further, the Regulation specifically provides for the final review and decision to be made by the Executive Director "or designee." If we were to adopt Gandy's interpretation, requiring the Executive Director's personal review and determination of transfer applications, we would render the Regulation's specific mention of a designee meaningless. We reject interpretations of clauses that render words or phrases superfluous, and we neither add nor subtract words that contravene the obvious intent within a provision's plain language. *See People v. Cross*, 127 P.3d 71, 73 (Colo. 2006). Accordingly, we reject Gandy's suggested interpretation of the Regulation which would prohibit the Executive Director from delegating his authority to perform a final review and determination to a designee.

¶ 27 Defendants maintain that the Regulation allows the final review and determination of an offender's application to be made by the Director, who they allege acted as the Executive Director's designee. Defendants state in their answer brief that "[w]ith [the authority delegated under sections 17-1-101 to -119.5, C.R.S. 2016], the Executive Director appointed Defendant Hager as Director of Prisons and delegated authority to Mr. Hager, as appropriate."

¶ 28 To begin, defendants do not cite to any portion of the record supporting the assertion that the Executive Director delegated authority to the Director to act as his designee, and our review of the record reveals no evidence that the Executive Director made any delegation. That the Regulation

lacks a prohibition on such a delegation does not mean that it occurred.

¶ 29 However, even assuming that the Executive Director intended to delegate the authority to perform a final review and decide about transfer applications to the Director, we reject defendants' argument that the Regulation permitted the Executive Director to name the Director as the designee. The Regulation enumerates steps in the "Transfer Application Process" that, through the use of mandatory language, require sequential review be performed and recommendations made by different individuals before reaching the final step of review by the Executive Director or his designee. To allow the Executive Director to name the Director as his designee would essentially eliminate the final step in the process, rendering the language in DOC Admin. Reg. 550-05(IV)(D)(6) requiring a final review and decision at the Executive Director level superfluous. Again, we reject defendants' interpretation because it would render language within the Regulation meaningless.

¶ 30 For these reasons, we conclude that the district court erred when it held that Gandy failed to state a claim for mandamus relief and dismissed his complaint pursuant to C.R.C.P. 12(b)(5).

## V. Requirements for Reapplication

¶ 31 Gandy urges us to consider whether the Director erred when he imposed a two-year waiting period before Gandy would be eligible to reapply for a transfer. Gandy acknowledges that the district court did not rule on this issue, because it concluded on other grounds that Gandy was not entitled to mandamus relief. Because this is a question of law, which may arise on remand, we address it here.

¶ 32 The Director's denial letter stated "[p]er CDOC administrative regulation 550-05, you may reapply in 2 years." Gandy also alleged in his complaint that, in attempting to submit previous applications for transfer in 2013, he was told by DOC officials that the Regulation required him to wait two years to reapply for transfer. Defendants note that the Department of Justice procedures require inmates to wait two years to reapply if

the United States denies their transfer applications. This requirement is reflected in the Regulation provision addressing the Department of Justice's determination of the transfer application:

> Upon final determination by the Department of Justice and the treaty nation, all parties involved in the application process will be advised of the decision. . . . If the transfer request is denied, the offender is ineligible for reconsideration for a two year period, according to Department of Justice guidelines.

DOC Admin. Reg. 550-05(IV)(D)(8).

¶ 33 Defendants argue that nothing in the Regulation prevents the DOC from uniformly applying the same requirement for Department of Justice denials to DOC denials. However, we will not add language to the Regulation imposing additional procedural requirements upon offenders. If the DOC wished to promulgate a Regulation requiring that offenders wait two years before reapplying for transfer if denied by the DOC, it could have done so. Accordingly, we agree with Gandy that the Regulation does not require or provide for the imposition of a two-year waiting period upon denial of a transfer application by DOC before permitting an offender to reapply. Because we hold the Regulation did not require a two-year waiting period, we need not address Gandy's claims that a two-year waiting period violates the Supremacy Clause by contravening the Treaty's language allowing an offender to submit a transfer request directly to the Receiving State.

¶ 34 Gandy also argues that the Director erred when he "imposed an ad hoc change of circumstances standard in evaluating his application." The Director wrote in his denial letter, "I would encourage you to use the next 2 years to provide documentation that would support those reasons for denial having changed." The Director did not indicate that he would require documentation before reviewing further applications from Gandy. Rather, the Director appeared to be advising Gandy on how to strengthen future applications. Because the Director did not impose

any requirement based on changed circumstances, we need not decide whether the Regulation would permit such a requirement.

## VI. Constitutional Claims

¶ 35 Gandy argues that the district court erred when it dismissed his constitutional claims for failure to state a claim. We disagree.

### A. Supremacy Clause

■ ¶ 36 Gandy alleged that the Regulation conflicted with international treaties and thus violated the Supremacy Clause of the United States Constitution. Specifically, he argues that the Regulation's sequential process requiring that an offender first make his or her request for transfer to the DOC conflicts with the provisions in a 1983 multilateral treaty to which the United States and Canada are parties. However, defendants did not address the 1983 treaty in their answer brief, nor did the district court address it in its order. Rather, they cited to the 1978 bilateral treaty between Canada and the United States previously discussed in Part II.A.

■ ¶ 37 We review de novo whether the Regulation conflicts with federal treaties and thus violates the Supremacy Clause. *Gandy III*, ¶ 22. "The Supremacy Clause ... provides that all treaties made under the authority of the United States shall be [the] supreme law of the land." *Id.* at ¶ 23; *see* U.S. Const. art. VI, cl. 2. "When a state statute or regulation conflicts with a valid federal law, that statute or regulation is preempted." *Gandy III*, ¶ 24.

¶ 38 The multilateral treaty Gandy cites provides that "[an offender] may express his interest to the sentencing State [in which the sentence was imposed on the offender] or to the administering State [to which the offender wishes to be transferred to serve his sentence] in being transferred under this Convention." Convention on the Transfer of Sentenced Persons art. 2, ¶ 2, Mar. 21, 1983, 35 U.S.T. 2867, E.T.S. No. 112 (entered into force Jan. 7, 1985) (the Convention). Gandy argues that this language conflicts with the sequential steps set forth in the Regulation

requiring that an offender first obtain the consent of the sentencing state before proceeding to obtain federal approval and finally approval of his nation of citizenship for transfer. Like the district court, we perceive no conflict between the Convention and the Regulation.

¶ 39 While an offender may initially express to either country his interest in transfer, the Regulation describes the process to obtain consent from Colorado before the Department of Justice or the other country considers the transfer application. The Treaty, which articulates the specific agreement between Canada and the United States, explicitly provides that if an offender was sentenced under state or provincial law, the offender must obtain approval of that state or province for transfer. Treaty, art. III, ¶ 5. The Regulation facilitates this provision of the Treaty by creating a process through which an offender can obtain state approval and in doing so does not contravene the language of the Convention, as Gandy suggests.

¶ 40 Thus, the district court did not err when it dismissed Gandy's Supremacy Clause claim for failure to state a claim.

### B. Equal Protection Clause

■ ¶ 41 Gandy argued that defendants discriminated against him by refusing to process his transfer request due to his national origin. The Equal Protection Clause of the Fourteenth Amendment "guarantees that similarly situated persons will receive like treatment under the law." *United Airlines v. Indus. Claim Appeals Office*, 2013 COA 48, ¶ 32, 312 P.3d 235; *see* U.S. Const. amend. XIV, § 1. To state a claim for discrimination based on national origin, Gandy must show that he has been treated differently from others who are similarly situated. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). We broadly construe Gandy's pro se complaint. *See People v. Bergerud*, 223 P.3d 686, 696-97 (Colo. 2010). Even so, we agree with the district court that Gandy did not plead any facts supporting his general allegation that he has been treated differently from offenders of other countries seeking transfer.

Accordingly, the district court did not err when it dismissed Gandy's equal protection claim for failure to state a claim.

## VII. Administrative Procedure Act Claim

¶ 42 Gandy contends the district court erred when it did not rule on his alternative claim for relief that the DOC violated the state Administrative Procedure Act. Because we conclude he is entitled to relief on his mandamus claim, we need not consider that argument here.

## VIII. Conclusion

¶ 43 We affirm the district court's judgment dismissing Gandy's constitutional claims. We reverse the judgment dismissing Gandy's complaint seeking mandamus relief and remand the case to the district court with directions to enter an order directing the Director to forward Gandy's transfer application and accompanying recommendations to the Executive Director or the Executive Director's designee for final review and decision, consistent with the views in this opinion.

JUDGE WEBB and JUDGE FREYRE concur.